DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **GREAT LAKES INSURANCE SE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-0029 |
| | ) | |
| **ALLISON BORCHERT, MICHAEL BORCHERT, HAM AND CHEESE EVENTS D/B/A SEAS THE DAY, and SOUTH STATES BANK,** | ) ) ) ) | ACTION IN ADMIRALTY FOR DECLARATORY RELIEF |
| | ) | |
| **Defendants.** | ) ) | |

## JUDGMENT

**THIS MATTER** is before the Court upon the motion of Great Lakes Insurance SE ("Great Lakes") for default judgment against Defendants Allison and Michael Borchert (collectively, the "Borcherts"), Ham and Cheese Events, LLC d/b/a Seas the Day ("Ham & Cheese"), and South States Bank (the "Bank," which, along with the Borcherts and Ham & Cheese are, collectively, the "Defendants"). After careful review and consideration of the record, the Court finds as follows:

1. This is a case of admiralty and maritime jurisdiction and is an admiralty and maritime claim within the meaning of Fed. R. Civ. P. 9(h).

2. Great Lakes is an insurance company based in Munich, Germany.

3. The Borcherts are a married couple who are citizens of the State of Georgia and own the sailing vessel "Arwen," a 2006 50-foot Beneteau powered by a 75 hp Yanmar diesel engine, bearing Hull ID No. BEYF2070J607 (the "Vessel"). *See* Policy Schedule, ECF No. 1-1 at 2.

4. Ham & Cheese is a limited liability company organized and existing under the laws of the United States Virgin Islands and was named as a defendant in this case because it is noted as an additional assured under the policy of ocean marine insurance at issue in this matter, namely, policy number CSRYP/179153 underwritten by Great Lakes,

    delivered to the Borcherts, and covering the Vessel for the period from November 19, 2019 to November 19, 2020 (the "Policy"). *Id.* at 2.

5. The Bank is a regional bank with branches located in Georgia, North Carolina, South Carolina, and Virginia. The Bank was named as a defendant in this case because it is noted as a loss payee in the Policy Schedule. *Id.* at 3.

6. The Policy was underwritten by Great Lakes through its underwriting agent, Concept Special Risks Ltd. "Concept"). *See* Marine Insurance Policy, ECF No. 1-2.

7. In order to obtain the Policy, the Borcherts submitted to their agent, Theodore Tunick & Co. ("Tunick"), an application for insurance (the "Application"), which Tunick in turn submitted to Concept, as underwriting agent for Great Lakes. A copy of the Application was attached to the Complaint. *See* Insurance Application, ECF No. 1-3. The application form signed by Michael Borchert on November 12, 2019, provided in pertinent part: "[Question] IS THIS VESSEL CHARTERED TO OTHERS WITH A CAPTAIN? [Answer] YES [Question] DOES THIS APPLICANT EMPLOY PAID CREW[?] [Answer] YES (IF YES, HOW MANY?) 1, only the captain [Question] IS THIS VESSEL CHARTERED TO OTHERS WITHOUT A CAPTAIN (BAREBOAT)? [Answer] NO [Question] . . . IS THIS VESSEL USED FOR ANY OTHER COMMERCIAL OR BUSINESS PURPOSES? [Answer] NO[.]" (Application Form, ECF No. 1-3 at 3.) The application provided that "**ALL OPERATORS MUST BE DETAILED**", *id.* at 3, 6, and contained multiple warnings in bold language: "**WARNING: THIS IS A NAMED OPERATOR ONLY POLICY**", *id.* at 4,6. Directly above Mr. Borchert's signature on the application under the heading, "**PLEASE READ BEFORE SIGNING APPLICATION**," appeared the following:

   1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained therein.
   2. Any misrepresentation in this application for insurance may render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.

   *Id.* at 5.

8. The Policy Schedule identified the following as the "**Named Operators:**" Michael Borchert, Valerie Borchert, Steve Van Wig,[1] and Larry Keller. (ECF No. 1-1 at 2.)

9. The Commercial Yacht Insuring Agreement (SYP/8/COM) defines "[c]overed person" as "you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us in writing as an operator of the Scheduled Vessel." *See* Policy, ECF No. 1-2 at 2, § 1.c.

10. Section 1.q. of the Policy provides: "'Operate, operation, operating' means to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel." *See id.* at 3, § 1.q.

11. Section 2. of the Policy provides:

    > This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

    *See id.* at 3-4, § 2.

12. Section 9.b. of the Policy provides: "This insuring agreement incorporates in full your application for insurance and together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement." *See id.* at 12, § 9.b.

13. Section 9.e. of the Policy provides: "If you sell or pledge the Scheduled Vessel or otherwise transfer ownership in part or in full, or give up possession of the Scheduled Vessel, whether actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary." *See id.*, § 9.e.

---

[1] "Pursuant to Policy Endorsement 3, dated January 21, 2020, Van Wig was deleted[,] and John Witherss Morris was added as a named operator of the Vessel." Complaint at 4 n.1, ECF No. 1.

14. Section 9.i. of the Policy provides, in relevant part: "It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel." *See id.*, § 9.i.

15. Section 9.l. of the Policy provides: "This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision." *See id.* at 13, § 9.l.

16. Section 9.s. of the Policy provides:

    Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

    *See id.* at 14, § 9.s.

17. Section 9.w. of the Policy provides:

    It is warranted that the Scheduled Vessel will be operated only by covered persons. However, in the event of an incident occurring when the vessel is being operated by any person other than a covered person that may give rise to a claim under this insurance, you have a period of seven days following such an incident to submit details of the operator for retroactive approval by underwriters. Such approval not to be unreasonably withheld.

    *See id.* at 15, § 9.w.

18. Finally, section 11. of the Policy contains the following choice of law provision:

    **It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

*See id.* at 16, § 11. (emphasis in original).

19. On or about February 14, 2020, Great Lakes received an untimely notice that the Estate of Sylviana Locke was pursuing claims against the Borcherts and the Vessel,

among others, arising out of Mrs. Locke's near drowning on December 25, 2019 (and subsequent death) while she was a charter passenger on the Vessel.

20. Great Lakes' investigation revealed that the Vessel had been turned over to or bareboat chartered by the Borcherts to Ham & Cheese without a captain or a captain approved by Great Lakes, pursuant to an undisclosed "Yacht Management Services Agreement" between the Borcherts and Ham & Cheese dated October 11, 2019, and that the captain of the Vessel at the time of the near drowning incident (Will Roberts) was not a named operator of the Vessel approved by Great Lakes.

21. Because the Vessel was operated by Captain Will Roberts on the date of Mrs. Locke's near drowning and he was not a named operator approved by Great Lakes, the Borcherts breached the warranty contained in section 9.w. of the policy, that "the Scheduled Vessel will be operated only by covered persons," rendering the Policy void from its inception. *See* Policy, ECF No. 1-2 at 15, § 9.w.

22. Section 9.l. of the Policy incorporates the maritime doctrine of *uberrimae fidei*, which imposes a duty of the utmost good faith and requires that parties to an insurance contract disclose all facts material to the risks insured.

23. The Borcherts misrepresented or failed to disclose their business relationship with Ham & Cheese, their intention to give possession of the Vessel to Ham & Cheese to use in its charter business, and that the Vessel would be operated by captains who were neither identified to nor approved by Great Lakes. These facts were material to Great Lakes' decision to insure the risks covered by the Policy.

24. If the Borcherts had disclosed these facts, Great Lakes would not have agreed to insure the Vessel, would not have agreed to issue the Policy, would not have agreed to issue the Policy with the same terms and conditions, and/or would have charged a higher premium for the Policy.

25. On March 31, 2020, Great Lakes filed the captioned action against the Defendants.

26. The Defendants were served with a copy of the Summons and Complaint in this matter and each Defendant executed waivers of service of summons. (ECF Nos. 4, 5, 6, 11.)

27. On September 23, 2020, default was entered against the Borcherts and the Bank for their failure to appear, answer, respond, or otherwise defend this action within the time limited by law. On December 15, 2020, default was entered against Ham & Cheese for its failure to appear, answer, respond, or otherwise defend this action within the time limited by law.

28. The Defendants are neither infants nor incompetent persons and are not serving in any branch of the U.S. military. *See* Declaration, ECF No. 33-1.

29. Accordingly, Great Lakes is entitled to a default judgment against Defendants for the relief sought in its Complaint.

Now therefore, on motion of Plaintiff Great Lakes for default judgment against Defendants, it is hereby

**ORDERED** that, pursuant to Fed. R. Civ. P. 55(b)(2), Great Lakes' Motion for Default Judgment, ECF No. 32, is **GRANTED**; it is further

**ORDERED, ADJUDGED, AND DECREED** that Great Lakes is awarded final judgment against the Defendants, declaring that as a result of the Borcherts' breaches of their express warranty and the duty of utmost good faith, the Policy was null and void at the date of its inception, and that Great Lakes may properly deny all claims against the Policy; it is further

**ORDERED, ADJUDGED, AND DECREED** that Great Lakes has no liability under the Policy to the Borcherts, Ham & Cheese, the Bank, and to all those claiming from and under them under the Policy; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE** this case.

**Dated:** March 15, 2022    */s/ Robert A. Molloy*
    **ROBERT A. MOLLOY**
    **Chief Judge**